UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>TITILAYO AKINTOMIDE AKINYOYENU,<br><br>Defendant. | Criminal Action No. 15-42 (JEB) |

**MEMORANDUM OPINION**

Defendant Titilayo Akinyoyenu once ran a pharmacy in Washington, D.C., and, for some time, another one online. His internet agora allowed customers to purchase a melange of medications. Customers, however, did not need to submit their own prescriptions when ordering; instead, they filled out short medical questionnaires, which Akinyoyenu's network of doctors – including Co-Defendant Alan Saltzman – reviewed summarily before prescribing the drugs sought in the orders. In 2015, a grand jury returned an Indictment charging Defendant with several drug-related offenses and, as relevant here, conspiracy to commit mail fraud.

As one of several pretrial motions to dismiss, Akinyoyenu now asserts that his mail-fraud count fails to state an offense because he did not deprive anybody of money or property. By his theory, customers received the drugs they ordered at the price they agreed to pay, so they lost nothing. Because this cabined view of mail fraud misunderstands the nature of that offense, the Court will, for the most part, deny Defendant's Motion.

**I.     Background**

The Court gleans its understanding of the case by assuming as true the facts set forth in the Indictment. See United States v. Ballestas, 795 F.3d 138, 149 (D.C. Cir. 2015).

Akinyoyenu was a pharmacist who owned and operated Apex Care Pharmacy here in Washington. See Indictment, Count One, ¶ 8. As the Internet age dawned, Defendant innovated. He hired a technology firm to design an online expansion to his brick-and-mortar business. Id., ¶ 17. The resulting websites – apexonlinepharmacy.com and bynextday.com – operated from January 2005 to June 2010 and offered for sale dozens of medications. Id., ¶¶ 12, 17-18.

Defendant's websites allowed visitors to place orders, but informed them that all orders would require a valid prescription up front. Id., ¶ 19. Specifically, the websites stated:

> apexonlinpharamacy.com does not prescribe medication directly. The physician has the ultimate authority to diagnose a medical condition and/or offer a treatment option. All orders require a prescription from your doctor or other health care professional that is licensed in the United States to write prescriptions for medicine.

Id. This was not entirely true – for a few reasons. To start, Akinyoyenu never required customers to provide their own prescriptions. Id., ¶¶ 18-20. Defendant also did offer prescription services directly. Customers would fill out an online medical questionnaire when completing their orders; Defendant then forwarded those questionnaires to his affiliated doctors – e.g., Saltzman – who, for a fee, summarily approved the drug orders while issuing prescriptions for those drugs. Id. And finally, by requiring a prescription in the first place, Akinyoyenu implied that these rubberstamp prescriptions were somehow sound and legal stand-ins (or never told customers otherwise). Id., ¶¶ 18-21. All in all, he reaped over $8 million in sales by selling and shipping drugs. Id., ¶ 22.

Displeased with these unscrupulous dealings, the Government indicted Akinyoyenu and Saltzman in March 2015. The Indictment listed three drug offenses as well as a fourth charge of mail-fraud conspiracy. As to the last, the pair allegedly engaged in a "scheme to defraud online drug customers, and federal and state regulatory agencies," of money or property by making false representations in these prescription-drug sales. Id., Count Four, ¶ 2.

Defendant now moves to dismiss this last count on the ground that it fails to state an offense.

## II.     Legal Standard

Before trial, a defendant may move to dismiss an indictment (or specific counts) on the basis that it fails to state an offense – *i.e.*, that "the indictment does not charge a crime against the United States." United States v. Cotton, 535 U.S. 625, 631 (2002) (quoting Lamar v. United States, 240 U.S. 60, 65 (1916)); see Fed. R. Crim P. 12(b)(3)(B)(v) & 2014 advisory committee notes; Al Bahlul v. United States, 767 F.3d 1, 10 n.6 (D.C. Cir. 2014) ("Failure to state an offense is simply another way of saying there is a defect in the indictment."). The operative question is whether the allegations in the indictment, if proven, permit a jury to conclude that the defendant committed the criminal offense as charged. See United States v. Sanford, Ltd., 859 F. Supp. 2d 102, 107 (D.D.C. 2012); United States v. Bowdoin, 770 F. Supp. 2d 142, 146 (D.D.C. 2011).

In reviewing the indictment, the court affords deference to the "fundamental role of the grand jury." Ballestas, 795 F.3d at 148 (quoting Whitehouse v. U.S. Dist. Court, 53 F.3d 1349, 1360 (1st Cir. 1995)). As a result, "[a]dherence to the language of the indictment is essential because the Fifth Amendment requires that criminal prosecutions be limited to the unique allegations of the indictments returned by the grand jury." United States v. Hitt, 249 F.3d 1010, 1016 (D.C. Cir. 2001). The court accordingly cabins its analysis to "the face of the indictment and, more specifically, the language used to charge the crimes." United States v. Sunia, 643 F. Supp. 2d 51, 60 (D.D.C. 2009) (emphases and internal quotation marks omitted).

## III.    Analysis

Although the mail-fraud statute's language is hardly pellucid, the crime consists of two basic elements: (1) a scheme to defraud another of money or property (2) through use of the

3

mail.  United States v. Coughlin, 610 F.3d 89, 97 (D.C. Cir. 2010); see 18 U.S.C. § 1341.  Akinyoyenu's several challenges center around whether the first element is properly stated in the Indictment.  The Court addresses two of his claims in prefatory fashion before homing in on the nub of his Motion – whether the Indictment sufficiently alleges that any customers lost actual money or property.

To begin, Akinyoyenu contends that there is no plausible legal theory that could support the Indictment's contention that he participated in "a scheme to defraud . . . federal and state regulatory agencies." Mot. at 4, 6-7 (quoting Indictment, Count Four, ¶ 2).  As the Government both concedes that its inclusion of agencies as purported victims was in error and represents that it will not pursue this theory at trial, the Court strikes the words "and federal and state regulatory agencies" in Count Four as irrelevant to this case and as prejudicial in making the scheme seem more grandiose than it was.  See United States v. Oakar, 111 F.3d 146, 157 (D.C. Cir. 1997) (holding surplus language "may only be stricken if it is irrelevant and prejudicial").

Defendant next claims that the Indictment fails to state an offense because it alleges only that he participated in "a scheme to defraud online drug customers" and does not specify how he defrauded them of money or property.  Problems abound with this argument.  First of all, it appears only in Akinyoyenu's Reply.  Compare Reply at 2-3 (making argument), with Mot. at 4 (quoting relevant case once in applicable-law section).  Even were the Court to consider the point, a failure-to-state-an-offense motion is not the correct vehicle for such an objection, as "a scheme to defraud" precisely mirrors the statutory language.  See 18 U.S.C. § 1341 (criminalizing "any scheme or artifice to defraud").  What Akinyoyenu means to bring is a challenge to the Indictment's specificity under Federal Rule of Criminal Procedure 7(c)(1), which requires "a plain, concise, and definite written statement of the essential facts constituting

4

the offense charged." Generously construing this as a Rule 7(c)(1) argument, then, the Court is nonetheless satisfied that the Rule's minimal sufficiency requirements are met. "[A]n indictment need only inform the defendant of the precise offense of which he is accused so that he may prepare his defense and plead double jeopardy in any further prosecution for the same offense." United States v. Verrusio, 762 F.3d 1, 13 (D.C. Cir. 2014). The how that Akinyoyenu claims he is not informed of is manifest. Count Four – in effect, fifteen pages long – depicts an online pharmaceutical scheme to sell drugs to customers while deceiving them as to the soundness of their prescriptions. See Indictment, Count Four, ¶¶ 3-4 (incorporating Indictment, Count One, ¶¶ 17-27, and Overt Acts, ¶¶ 1-14); e.g., id., Count One, ¶¶ 18-21 (describing improper prescription process despite website language stating valid prescriptions were required).

With these two appetizers cleared away, Akinyoyenu cooks up his main course. He contends that the Indictment does not charge that customers were actually deprived of either money or property because, allegedly, "[t]hey received exactly what they ordered." Mot. at 5. Put very simply: no harm, no foul.

Let's dig in. The money-or-property requirement does appear on the face of the mail-fraud statute, see 18 U.S.C. § 1341, and in some other circuits is a separate element. See, e.g., United States v. Binday, 804 F.3d 558, 569 (2d Cir. 2015). Yet the definition of these two words is not immediately apparent. Fortunately, jurisprudence on the meaning of "property" in mail- and wire-fraud cases illuminates both terms' meanings. The Supreme Court has specified, first, that "intangible rights" are not "property," see McNally v. United States, 483 U.S. 350 (1987), but added that "intangible property rights" do constitute valuable property interests within the meaning of the statute. Carpenter v. United States, 484 U.S. 19, 25-27 (1987) (emphasis added).

These intangible property rights include the "right to decide how to use" one's property."  Id. at 26.

The same principles apply to "money."  An individual's "right to control how [his] money is spent" is also a recognized monetary interest for the purposes of mail fraud.  United States v. Trie, 21 F. Supp. 2d 7, 20 (D.D.C. 1998) (citing United States v. Madeoy, 912 F.2d 1486, 1492 (D.C. Cir. 1990)).  The basic premise is that depriving individuals of information necessary to evaluate their monetary transactions is prohibited, as that deprivation in itself strips the gainful value of their capital.  See United States v. Carlo, 507 F.3d 799, 802 (2d Cir. 2007) (predicating theory on deprivations of "information necessary to make discretionary economic decisions"); e.g., Trie, 21 F. Supp. 2d at 13 (where defendants affected Democratic National Committee's spending by concealing information that donations were "foreign money").  Although misinformation comes in many forms, this Indictment does not simply rest on some immaterial, errant website disclaimer, but on misrepresentations that go to the heart of pharmaceutical purchases: the validity, necessity, and legality of prescriptions.  See United States v. Shellef, 507 F.3d 82, 108 (2d Cir. 2007) ("Our cases have drawn a fine line between schemes that do no more than cause their victims to enter into transactions they would otherwise avoid – which do not violate the mail or wire fraud statutes – and schemes that depend for their completion on a misrepresentation of an essential element of the bargain – which do violate the mail and wire fraud statutes.").  In fact, it is even arguable that prescriptions are so central to the product that legally acquired drugs are qualitatively different as property from illegally acquired drugs.

In any event, whatever the precise theoretical contours of this case, it is well recognized that prosecutors may charge a "right to control" theory of mail (and wire) fraud.  See, e.g.,

Madeoy, 912 F.2d at 1492; United States v. Bucuvalas, 970 F.2d 937, 945 (1st Cir. 1992), abrogated on other grounds by Cleveland v. United States, 531 U.S. 12 (2000); United States v. Wallach, 935 F.2d 445, 463 (2d Cir. 1991); United States v. Hedaithy, 392 F.3d 580, 603 (3d Cir. 2004); United States v. Gray, 405 F.3d 227, 234 (4th Cir. 2005); United States v. Fagan, 821 F.2d 1002, 1011 n.6 (5th Cir. 1987); United States v. Kerkman, 866 F.2d 877, 880 (6th Cir. 1989); United States v. Catalfo, 64 F.3d 1070, 1077 (7th Cir. 1995); United States v. Shyres, 898 F.2d 647, 652 (8th Cir. 1990); United States v. Welch, 327 F.3d 1081, 1108 (10th Cir. 2003); United States v. Cross, 928 F.2d 1030, 1044 (11th Cir. 1991).

As must be apparent from the lengthy string citation above, however, Ninth Circuit case law is less clear-cut, and Akinyoyenu principally relies on a case from that circuit, United States v. Bruchhausen, 977 F.2d 464 (9th Cir. 1992). See Mot. at 5-6; see also 2 Leonard B. Sand, Modern Federal Jury Instructions – Criminal, ¶ 44-3 cmt. (2016) (documenting "differing approaches of the Ninth Circuit and the other courts"). Without casting any aspersions on the West Coast, the Court merely observes that Bruchhausen is inapposite. At issue there was whether the mail-fraud statute protected sellers to a distributor who claimed a right to control whether their sold goods ended up in the Soviet Bloc, and the Ninth Circuit answered in the negative. See Bruchhausen, 977 F.2d at 467-68 (denying that "a manufacturer has a property interest in the destination of its products."). Fairly read, the takeaway of that case is simply that individuals might have a right to control their transactions but no right as to later transactions.

This Indictment, however, does not introduce some far-flung notion that customers were deprived of their right to control Akinyoyenu's later use of the money that he fraudulently obtained from them. Instead, it alleges a theory squarely within the bounds of well-established right-to-control case law (though it does not utter the magic words "right to control" or "right to

7

decide"). Count Four describes a scheme to defraud customers of "money, property, and things of value" through fraudulent representations. See Indictment, Count Four, ¶ 2. To wit, Akinyoyenu falsely expressed to customers that the prescriptions accompanying their transactions would be valid (or neglected to tell them otherwise). See id., Count One, ¶ 21. The online buyers were, allegedly, duped into purchasing prescription drugs both without knowing whether they really needed those drugs and without realizing that the transactions were illicit. Because those misrepresentations might have influenced their choice of whether to even make purchases in this setting, the Indictment sufficiently states a fraudulent deprivation of money or property.

**IV.    Conclusion**

For the reasons set forth above, the Court will grant in part and deny in part Defendant's Motion in a separate Order to be issued this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: August 23, 2016